JULIAN SCHOLL & another *vs.* GEORGE W. KILLORIN.

Middlesex.    November 24, 1905. — March 1, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Evidence*, Extrinsic affecting writings.

In an action for the balance of the price of a steam roller sold by the plaintiff to the defendant under a contract in writing, described as "one of our Universal Steam Rollers of ten tons weight" and guaranteed to be "a first class and proper roller in every respect for building roads of crushed stone and gravel," the defendant cannot be allowed to show by oral evidence that when he ordered the roller before the execution of the contract he told the plaintiff that he wanted the roller for doing work between the rails of street railway tracks and that it should not be more than fifty-two inches wide and that the plaintiff agreed to furnish him a roller of that width, whereas the one furnished was fifty-four inches wide and for that reason was unsuitable for the work for which it was ordered.

CONTRACT, for a balance alleged to be due of the price of a steam roller sold to the defendant under a contract in writing printed below. Writ dated January 11, 1905.

At the trial in the Superior Court the jury returned a verdict for the plaintiffs in the sum of $643.43; and the defendant alleged exceptions.

The following statement of the case is taken from the opinion of the court:

This is an action of contract to recover the unpaid balance due under the following contract:

" Proposal for Universal Steam Roller
Executed in Duplicate.

" February 17, 1904.

" Mr. Geo. W. Killorin,
          Wakefield, Mass.

" Dear Sir: —

" We will furnish you one of our Universal Steam Rollers of 10 tons weight, F. O. B. factory for the sum of three thousand and one hundred dollars ($3100).

" Terms: — $1000 cash upon acceptance of this proposition and remaining $2100 to be paid 30 days after delivery of said roller.

" We hereby agree to pay one half of the freight charges necessary to deliver the said roller at Wakefield, Mass. and we will furnish the services of an expert operator to unload roller and instruct in the use of same, for which you are to pay us the sum of $4 per day beside paying for the lodging and board of said operator from the time of his arrival to unload roller until notified by you that his services are no longer required. It being also understood that you will furnish all necessary timbers and labor for constructing incline down which the roller must be run when taken from the car beside rendering such other assistance as may be necessary in unloading roller.

" We guarantee this roller to be a first class and proper roller in every respect for building roads of crushed stone and gravel; well made and durable; of the best materials and workmanship throughout, and we will furnish for one year free of charge F. O. B. cars factory, any part that may be found defective in either workmanship or material under proper usage, but this guarantee does not contemplate furnishing free of charge parts which may be required through ordinary wear and tear.

" Julian Scholl & Co.
          by Hines.

" The above proposition is hereby accepted on the day above written.

" G. W. Killorin."

The roller was delivered in the early part of April, 1904. On June 25 of the same year the defendant wrote that he " bought this roller to be a 52″ wide the width of wheels so I might roll stone between tracks of regular gauge. Mr. Hines told me that it is only 52″ wide but according to my measure it is 54″ wide which makes it 2″ too wide to do the work which I bought it to do," and he finally refused to pay for it on the ground that it was fifty-four inches wide.

At the trial the defendant offered to prove the following facts:

" Mr. Moran. — The agent came there, and there was talk between them. My client said, ' My particular work is building street railways. I have got a roller for doing road work, and I don't need another one; but, from the picture you show me there, that roller looks as though it would be a good roller to roll between rails of tracks, and of course if it can do that work I will purchase it. I have one roller that will do road work now as I have been doing it, take a three-wheel roller, and one of the wheels will ride the track, and the other runs between. Now, if you say it can do that work, I will buy that roller.' ' Now, how wide had that roller ought to be ' —

" The Court. — Who said that, ' How wide ought it to be? '

" Mr. Moran. — Mr. Hines said, ' How wide ought it to be?' Mr. Killorin said it should be not more than fifty-two inches; ' the tracks are fifty-six inches, and in our tracks there are a great many guard rails; those guard rails are between two and three inches wide, and in going around curves there would have to be an inch or so to spare, so that in order that that roller could be used by me it should not be more than fifty-two inches; so if you say that you can furnish that kind of a roller for me, I will take it.' He says, ' That is just the kind of roller that we have; we will furnish such a roller for you; we will produce it for you; we will have that roller for you built so you can use it in track building if you purchase of us.' Some time later he made a statement in the presence of the defendant, in talking about this roller —

" The Court. — Afterwards ? . What does that mean, after the written instrument was made?

" Mr. Moran. — After the contract was made.

" The Court. — Anything said then wouldn't be competent anyway, unless it was an admission of what he said before.

" Mr. Moran. — The question came up of how the roller was liked; I think he was exhibiting it at the time, and he said, ' Mr. Killorin has got a good roller; he has got the only roller that can roll between the two rails of tracks. I sold him the roller for that particular purpose. That is the only roller manufactured that can do that.'

" That is all the evidence as stated. If your Honor rules that out, there is nothing further for the jury to decide.

" The Court. — The only suggestion I have to make about that is this: That can't be considered as in the nature of what would be called a false and fraudulent statement. That is, admitting all you say is true, that is only a promissory statement, a statement of what it will do. He says, ' What do you want, Mr. Killorin?' Mr. Killorin says, ' I want a roller fifty-two inches wide,' or a certain width. Mr. Hines says, ' Well, that is the kind we make; we have got it; we will furnish it.' Now that is not what would be called a false and fraudulent statement. If your client wished some specific kind of roller, he should have it inserted in the contract. I can't allow parol evidence to go in to modify a written contract.

" Mr. Moran. — He pointed to a photograph that he had of a roller which they made.

" Mr. Poland. — Not of this weight.

" Mr. Moran. — They had no roller in existence, a ten-ton roller fifty-two inches wide, and he knew it. He showed him this photograph and told him it would be a ten-ton roller like that; that they were all fifty-two inches wide." .

Upon this the presiding judge made this ruling: " Assuming that to be true, that he had promised to furnish it, that is promissory in its nature. It seems to me that would be opening the contract to allow the evidence to go in; it would be inserting something into that contract that wasn't agreed upon by the parties. More than that, it seems to me that the duty was imposed upon Mr. Killorin when the machine arrived to examine

it and find out what its condition was and whether it did fulfil the terms of the contract. If he did not see fit as to that, and kept it two or three months the vendors ought not to be harmed; he had no right to keep it in his possession two or three months without saying something, if any such agreement was made. I am only assuming the most favorable view of the defendant's case. I think under those circumstances I shall have to exclude that testimony."

To this ruling the defendant took an exception.

*A. D. Moran,* for the defendant.

*G. M. Poland,* for the plaintiffs.

LORING, J. [After the foregoing statement of the case.] The evidence was properly excluded on the first ground stated by the presiding judge. *Neale* v. *American Electric Vehicle Co.* 186 Mass. 303. *Kinnard Co.* v. *Cutter Tower Co.* 159 Mass. 391. It is not necessary to consider the other ground on which the ruling was made.

*Exceptions overruled.*